IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 1:13-CR-128-AT-JSA |
| ODILON MARTINEZ-ROJAS | : | |

GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO
DEFENDANT'S PRESENTENCE REPORT OBJECTIONS

The United States of America, by and through its undersigned counsel, Assistant United States Attorney Susan Coppedge and Department of Justice Trial Attorney Benjamin Hawk, respectfully submits this memorandum in advance of the sentencing of Odilon Martinez-Rojas, which is scheduled for January 22, 2014.

The defendant stands convicted of sexually exploiting three vulnerable young women. Motivated by greed, he and his co-defendant, Arturo Rojas-Coyotl, lured the women away from their homes through false promises and subjected them to violence and intimidation, forcing them to have sex with countless men. The defendant's abusive conduct was not a mere aberration. He helped Rojas-Coyotl control and prostitute FBF, for over a year, while he was prostituting his own victim named "Elizabeth." Before those women escaped, he started plotting with Rojas-Coyotl to bring another victim, SAM, and her best friend, MSJ, to

Atlanta to suffer the same fate. Once SAM arrived, he compelled her to prostitute and helped Rojas-Coyotl do the same to MSJ, who was a virgin at the time. The defendant's predatory acts caused the victims irreparable harm, and justice demands a significant term of imprisonment of 295 months which is in the middle of the guideline range, and a restitution order in the total amount of $220,500.

I. INTRODUCTION

    A. Procedural History

On May 14, 2013, a federal grand jury sitting in the Northern District of Georgia returned a First Superseding Indictment charging the defendant, Odilon Martinez-Rojas, his nephew and co-defendant, Arturo Rojas-Coyotl, and his brother and co-defendant, Severiano Martinez-Rojas, with three counts of Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. §1591, and three counts of Encouraging or Inducing Unlawful Entry or Residence, in violation of 8 U.S.C. § 1324. (Doc. 10.). On October 28, 2014 – after a jury had been selected and just prior to the trial beginning – he pleaded guilty to all counts of the indictment and admitted to using force, fraud, and coercion to compel the three victims to engage in prostitution.

B.  The Offense Conduct

The government agrees with the statement of facts detailed in the Presence Report (PSR), and the defendant did not object to them. As summarized in the PSR, the defendant and Rojas-Coyotl employed a coercive scheme involving false promises, trickery and deception, violence and threats of harm, isolation, fear and intimidation, and emotional and psychological manipulation to compel three young vulnerable women – FBF, SAM, and MSJ – to prostitute in the Atlanta area between 2006 and 2008.[1]

II. The Government's Sentencing Position

Criminal sentencing has four purposes – retribution, deterrence, incapacitation, and rehabilitation. *United States v. Mogel*, 956 F.2d 1555, 1558 n.2 (11th Cir. 1992). Title 18, United States Code, Section 3553(a) sets forth the factors to consider when determining a sentence that is sufficient, but not more than necessary, to comply with these purposes. The Court must first calculate the applicable Guidelines range, which provides a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *see also* 18

---

[1] There is further indication that the defendants compelled other women to prostitute. PSR ¶¶ 16 (a woman known as "Elizabeth" worked for co-defendant Martinez-Rojas), 20 (FBF learned about other women being prostituted by the defendants), 40 (Rojas-Coyotl admitted at time of his arrest that woman living with him named MMC prostituted).

U.S.C. § 3553(a)(4).  Next, the Court must tailor the sentence in light of the remaining § 3553(a) factors.  *Gall*, 552 U.S. at 49-50.

    A.    <u>Guidelines Calculation</u>

The government agrees with the United States Probation Office's guidelines calculation in the Final Presentence Report.  The defendant's offense levels for Counts Three (Sex Trafficking of MSJ) and Count Five (Sex Trafficking of SAM) have been adjusted two levels for his aggravating role as an organizer, leader, manager and supervisor in those offenses.  The probation officer reserved an objection for the defendant to this aggravating role.

The Probation Office properly took into account the defendant's aggravating role when calculating the offense level for each victim.  United States Sentencing Guidelines § 3B1.1(c) provides that the offense level should be increased by 2 levels if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity."  "At a minimum . . . 'there must be evidence that the defendant exerted some control, influence or decision-making authority over another participant in the criminal activity."  *United States v. Offord*, 579 Fed. Appx. 834, 836 (11th Cir. 2014) (per curiam).  The United States need prove the defendant's role as an organizer, leader, manager and supervisor by a preponderance of the evidence.  *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993).  Even one

charged as an aider and abettor, as defendant was, may be a leader or supervisor. *United States v. Nyhuis*, 8 F.3d 731, 744 (11th Cir. 1993).

Here, the defendant was in charge and exerted some control, influence, and decision-making authority over Rojas-Coyotl and others involved in bringing MSJ and SAM to the United States. The defendant arranged to bring both MSJ and SAM to the United States from Guatemala through Mexico with the assistance of Freddy Martinez, Jose Rendon-Garcia, and unknown coyotes.[2]  PSR ¶¶ 25-26. He recruited these accomplices, wired them money, and directly paid the smuggler in Houston. After SAM arrived, he arranged for his brother Eladio Tenahua Rojas, know to the women as "El Chapparo," to drive SAM to prostitute against her will. PSR ¶ 28. *U.S. v. Mi Sun Cho,* 713 F.3d 716, 722-723 (2nd Cir. 2013)(holding that sending prostitutes to brothels, deciding where they would go, and directing and working with drivers who transported the victims qualified for a four-level enhancement base on defendant's leadership role).  He further provided advice to Rojas-Coyotl on how to control MSJ. *See United States v. Lozano*, 490 F.3d 1317, 1323 (11th Cir.2007) (affirming an enhancement where the defendant instructed at

---

[2] In fact, there is an argument to be made that defendant was an organizer and leader of a criminal activity that involved five or more participants: defendant; co-defendants Arturo Rojas Coyotl and Severiano Martinez Rojas, the latter of whom ran a brothel in Alabama where the victims were sent; Jose Rendon-Garcia who arranged at defendant's direction to obtain fraudulent documents for SAM and MSJ; the coyotes who were paid by defendant to smuggle the young women across the border and the countless drivers including defendant's own brother who transported the young women to customers at the behest of the defendant. *See  U.S. v. Scott,* 529 F.3d 1290, 1303 (10th Cir. 2008).

least one coconspirator to engage in criminal conduct). Defendant instructed Rojas-Coyotl to take MSJ to the doctor to see if she was lying about the injury to her vagina and could be sent back out to work. Defendant assaulted SAM when she tried to leave with MSJ demonstrating his control and decision-making authority on the ability of the victims to move freely. Finally, defendant controlled the proceeds derived from the exploitation of SAM. *U.S. v. Robinson,* 508 Fed.Appx. 867, 870 (11th Cir. 2013).

    B.    <u>A Sentence in the Middle of the Guidelines Range is Reasonable</u>

In light of the factors set forth in 18 U.S.C. § 3553(a), a sentence in the middle of the guidelines range of 295 months (24 and a half years) is appropriate in this case.

    1.    <u>Nature and Circumstances of the Offenses and Characteristics of the Defendant</u>

The seriousness of the defendant's crimes cannot be overstated, and his repeated predatory actions call for significant punishment. He played a direct role in the sexual exploitation of three young women, causing them untold irreparable harm. He physically and emotionally abused SAM and forced her to have sex with countless men in deplorable conditions, and he helped Rojas-Coyotl prostitute MSJ and FBF. After SAM learned that Rojas-Coyotl was prostituting MSJ, she confronted him and attempted to call a taxi so they could leave. PSR ¶ 29. In response, the defendant punched her in the stomach and told her she could not

leave. PSR ¶ 29. He also helped Rojas-Coyotl control FBF and he forced her to prostitute while Rojas-Coyotl was making his way to Atlanta. PSR ¶ 16-17. On two occasions he attempted to sexually assault FBF and tried to take her away from Rojas-Coyotl for his own purposes. PSR ¶ 17.

The defendant submitted an objection to the PSR in which he argues for leniency because he was "raised in a town who's [sic] main industry was prostitution and that he was more or less expected that he would go into the prostitution business." He further notes that his "mother forced him to quit school at 13 so that he could bring money into the family and that he acted as a pimp at the age of 13 because that was expected of him." First, these claims are contradicted by his own statements to the Probation Office that: "[his] mother worked in the fields and his step-father as a brick mason"; "[h]is mother instilled the importance of religious faith and good values"; "[t]here was no issues of abuse in the family home"; and "he went to Mexico city to seek employment" and "remained in Mexico City for approximately ten years before he entered the United States." PSR ¶ 97. Second, even if the defendant's family expected him to force young women to prostitute, such an expectation does not excuse his criminal conduct, nor does it bring justice to his victims. The defendant was a grown adult at the time he committed his crimes, not some adolescent being controlled by his parents. It was his decision to help Rojas-Coyotl control FBF and MSJ; it was his

7

decision to attempt to sexually assault FBF; it was his decision to trick SAM and MSJ to come to the United States; and it was his decision to abuse SAM. The truth is that the defendant was motivated by greed. He made significantly more money selling the bodies of his victims than he would have made working a legitimate job.

### 2. Need to Afford Adequate Deterrence and to Avoid Disparities in Sentences

Sex trafficking is an abhorrent crime that strips victims of their dignity and self worth, leaving them feeling ashamed and powerless. It is a crime that warrants a strong deterrent effort through the imposition of significant sentences. While sentencing another sex trafficker in this district in a factually similar case in which the defendants had smuggled in young women after romancing them and lying about their intended purpose in bringing them into the United States, United States District Court Judge Richard W. Story explained why human trafficking is such a terrible crime. *United States v. Francisco Cortes Meza*, No. 1:08-CR-055 (N.D. Ga), Doc. 242-14-15.

> I find that the conduct of the defendant in this case is despicable, and it is at several levels. It is that you took advantage of these young women through fraud and removed them from their homeland, from their families under a subterfuge and then brought them to this country. And you not only used them to earn your own livelihood, but you chose to do it in a way that was as demeaning as you could make it for them.

*Id.* A significant sentence in this case will serve not only to protect society from the defendant committing crimes in the future, but to deter other prospective sex traffickers, sending a strong message that these crimes will not be tolerated in our free society.

A term of imprisonment in the middle of the guidelines range will also avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In this district, such a sentence comports with the sentences received by similarly situated sex traffickers. *See, e.g.*, *United States v. Mustafa*, 1:11-CR-234-CAP (N.D. Ga.) (conviction after trial resulted in a life sentence for defendant who trafficked multiple victims); *United States v. Amador Cortes Meza*, 1:08-CR-55-RWS (conviction after trial resulted in a 40 year sentence for defendant who trafficked multiple victims); *United States v. Sims*, 161 Fed. App'x. 849 (11th Cir. 2006) (conviction after trial resulted in a 28 year sentence for defendant who trafficked single victim); *United States v. Harrison Norris*, 1:05-CR-479 (N.D. Ga) (conviction after trial resulted in a 35 year sentence for defendant who trafficked multiple victims). It further comports with the sentences received by Mexican sex traffickers in other districts. *See, e.g.*, *United States v. Flores-Mendez*, 1:13-CR-31 (S.D.N.Y) (guilty plea resulted in a life sentence for defendant who played an active role in trafficking at least one victim); *United States v. Lopez-Perez* 1:11-

CR-199 (E.D.N.Y.) (guilty plea resulted in a 18 year sentence for defendant who trafficked two victims).

III. The Government's Restitution Position

The Court should order the defendant to pay the three victims restitution in the total amount of $220,500. PSR ¶¶ 46-51. As noted in the PSR, the specific amounts of restitution for each victim – $165,900 for FBF, $21,000 for MSJ, and $33,600 for SAM – are conservative estimates. PSR ¶ 48.

Victims of crime have "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). In this case, 18 U.S.C. § 1593 provides for mandatory restitution for victims of sex trafficking. *See also United States v. Robinson*, 508 Fed. Appx. 867, 870 (11th Cir. 2013) (unpublished) ("The district court, therefore, properly concluded that, based on the plain language of § 1593, an award of restitution was mandatory."). Although the PSR notes that the defendant reported no assets, liabilities or monthly cash flow, ¶ 107, a defendant's "economic circumstances" should have no bearing on a court's decision to order restitution. 18 U.S.C. § 3664(f)(1)(A); *see also In re Morning Star Packing Co.*, 711 F.3d 1142, 1144 (9th Cir. 2013) (holding that district court committed legal error in denying restitution because of defendant's claimed financial status and potential availability of civil remedies).

Pursuant to § 1593, the defendant is required to pay restitution to each victim in "the full amount of the victim's losses," which includes "the gross income or value to the defendant of the victim's services or labor" and any other costs incurred by the victim as set forth in 18 U.S.C. § 2259(b)(3).[3] When determining the victim's losses, it is irrelevant that the earnings came from prostitution. *United States v. Cortes-Castro*, 511 Fed. Appx. 942, 947 (11th Cir. 2013) (unpublished) (rejecting the defendant's argument that "restitution rewards the victims for their illegal activities" by calling it "preposterous given that [the] victims were . . . forced to prostitute"); *United States v. Kuo*, 620 F.3d 1158, 1164 (9th Cir. 2010) ("[T]he Trafficking Act mandates restitution that includes a defendant's ill-gotten gains."); *United States v. Mammedov*, 304 Fed. Appx. 922, 927 (2d Cir. 2008) (unpublished) ("[T]he express terms of 18 U.S.C. § 1593 require that the victims in this case, i.e., persons who engaged in commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings came from illegal conduct.").

The government bears the burden of establishing the victim's losses by a preponderance of the evidence. 18 U.S.C. § 3664(e). In sex trafficking cases, restitution can be calculated by determining the average amount a victim earned

---

[3] Section 2259(b)(3) provides for restitution for medical services, counseling, and "any other losses suffered by the victim as a proximate result of the offense." At this time, the victims have not submitted a request for restitution to cover any additional losses.

11

for her services and the amount of time she worked for a defendant. *Robinson*, 508 Fed. Appx. at 871 (finding that evidence of "the amount charged . . . and the amount of time [the victim] worked for [the defendant] . . . supported the amount of restitution ordered"); *In re Sealed Case*, 702 F.3d 59, 62 n.1 (D.C. Cir. 2012) (calculating restitution by multiplying the average daily amount earned by the length of time the victim prostituted for the defendant); *United States v. Webster*, No. 08-30311, 2011 WL 8478276, at *3 (9th Cir. Nov. 28, 2011) (unpublished) (employing the following formulate to calculate restitution: "the number of weeks trafficked times the average number of days worked per week times the average number of dates per day times . . . the minimum amount the victims charged for a date"). Although "such a determination will inevitably involve some degree of approximation," it is "not fatal." *In re Sealed Case*, 702 F.3d at 66. "[T]he district court's charge is 'to estimate, based upon the facts in the record, the amount of [the] victim's loss with some reasonable certainty." *Id.*; *see also Webster*, 2011 WL 8478276, at *3 ("Any error in the district court's figure is more than offset by the conservative estimate of the fee per date used to determine restitution.").

Here, the victims were required to work virtually every night and to have sex with upwards of 25 to 30 men per night. PSR ¶ 48. The men were charged between $30 and $35 for 15 minutes of standard sex and paid more in the form of tips for additional sexual favors. Although the amount is likely significantly

higher, the government recommends that the Court use the conservative estimate of $2,100 in earnings a week, which is calculated by multiplying $30 by 70 customers (*i.e.*, 4 nights at 10 customers a night and 2 nights at 15 customers).

The defendant and his co-defendants prostituted FBF between May 2006 and November 27, which Probation calculated to be 79 weeks. PSR ¶ 49. Accordingly, the Court should order the defendant to pay FBF restitution in the amount of $165,900 (79 weeks x $2,100 per week).

The defendant and his co-defendants prostituted MSJ between December 2007 and March 2008, which Probation calculated to be 11 weeks. PSR ¶ 50. Probation reduced that time by one week to account for the time that MSJ could not work due to her vaginal injuries. Accordingly, the Court should order the defendant to pay MSJ restitution in the amount of $21,000 (10 weeks x $2,100 per week).

Finally, the defendant and his co-defendants prostituted SAM between December 2007 and April 2008, which Probation calculated to be 16 weeks. PSR ¶ 51. Accordingly, the Court should order the defendant to pay SAM restitution in the amount of $33,600 (16 weeks x $2,100 per week).

IV.    The Victims' Right to Be Heard at Sentencing

The government requests that the victims be allowed to exercise their procedural and statutory right to address the Court at sentencing.  Rule 32(i)(4)(B) of the Federal Rules of Criminal Procedure provides that "[b]efore imposing sentence, the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard."  Similarly, the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, guarantees victims of crime "[t]he right to be reasonably heard at any public proceeding in the district court involving . . . sentencing."  Courts have interpreted this right to mean the right to allocute (*i.e.* the right to speak directly to the court at sentencing).  *See, e.g.*, *United States v. Vampire Nation*, 451 F.3d 189, 197 n.4 (3d Cir. 2006) ("The right is in the nature of an independent right of allocution at sentencing."); *Kenna v. United States District Court*, 435 F.3d 1011, 1013-17 (9th Cir. 2006) ("[T]he district court . . . committed an error of law by refusing to allow [the victim] to allocute at [the defendant's] sentencing and we must therefore issue the writ [of mandamus].").  Affording victims their right to be heard serves several important purposes: it helps "[t]o ensure that the district court doesn't discount the impact of the crime on the victims" and "force[s] the defendant to confront the human cost of his crime" while "allow[ing] the victim 'to regain a sense of dignity and respect rather than feeling powerless and ashamed.'"  *Kenna*, 435 F.3d at 1016.

If the victims elect to be heard at sentencing, they should not be placed under oath, nor should they be subjected to cross-examination by the defendant. *United States v. DeAngelis*, 243 Fed. Appx. 471, 474-75 (11th Cir. 2007) (per curiam) (holding that refusal to allow the defendant to cross-examine the unsworn victim at sentencing did not violate the Fifth and Sixth Amendments); *see also United States v. Davis*, 177 Fed. Appx. 895, 900 (11th Cir. 2006) (affirming the admission of a witness's hearsay testimony regarding the impact of the crime on the victims). The victims' right to speak is analogous to the defendant's right to allocute. *United States v. Schrader*, No. 1:09-cr-0270, 2010 WL 4781625, at *3 (S.D.W.Va. Nov. 16, 2010) ("It is apparent that a victim has the right to speak at sentencing about the impact a defendant's criminal conduct has had upon her without being placed under oath and cross examined just as a defendant has the right to allocute in mitigation of sentence."). Both rights are codified in Rule 32(i)(4) and contain nearly identical language requiring the court to address the defendant and any victim present and to permit them to make a statement. Nothing in Rule 32(i)(4) or the CVRA requires the victims to be sworn, *United States v. Grigg*, 434 Fed. Appx. 530, 533 (6th Cir. 2011) (unpublished), and the defendant does not have a right to confrontation at sentencing. *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005). Moreover, under 18 U.S.C. § 3661, courts are not limited on the information they may receive and consider at sentencing

concerning a defendant's background, character, and conduct, including the impact of the crime on the victim. *United States v. Christensen*, 732 F.3d 1094, 1102 (9th Cir. 2013) ("As a general matter, then, a district court may consider victim impact statements, whether sworn or not, at sentencing.").

V.   CONCLUSION

For the foregoing reasons, the Court should impose a sentence in the middle of the guidelines range of 295 months and order the defendant to pay a total restitution amount of $220,500. The Court should also permit the victims to speak at the sentencing hearing should they so choose.

        Respectfully submitted,

        JOHN A. HORN
        ACTING UNITED STATES ATTORNEY


        /s/ Susan Coppedge
        SUSAN COPPEDGE
        ASSISTANT UNITED STATES ATTORNEY
        Georgia Bar No. 187251
        600 U.S. Courthouse
        75 Spring St., S.W.
        Atlanta, GA  30303
        PHONE: 404/581-6250
        FAX: 404/581-6181

VANITA GUPTA
ACTING ASSISTANT ATTORNEY GENERAL

/s/ Benjamin J. Hawk
BENJAMIN J. HAWK
TRIAL ATTORNEY
New Jersey Bar No. 030232007
U.S. Department of Justice
Civil Rights Division
Human Trafficking Prosecution Unit
601 D St. N.W.
Washington, DC 20004
PHONE: 202/514-8208
FAX: 202/514-8336

CERTIFICATE OF SERVICE

I served this document today, January 16, 2015, by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

>Alison Dawson
>Federal Defender Program
>Suite 1500, Centennial Tower
>101 Marietta St., NW
>Atlanta, GA  30303

>Cathy Alterman
>Alterman & Associates, P.C.
>2039 Dayron Court
>Marietta, GA  30062

>>*/s/ Susan Coppedge*
>>SUSAN COPPEDGE
>>ASSISTANT U.S. ATTORNEY